# Robert Freed, Plff. in Err., v. John Richey.

In an action by the vendor against the purchaser, for the purchase money of land, it is a good defense that the vendor agreed to convey a marketable title and has not done so.

This rule applies where the vendor obtains the land under a contract of exchange with a third person who thereby undertakes to make title directly to the purchaser.

(Argued May 9, 1888.    Decided May 21, 1888.)

July Term, 1888, No. 28, E. D., before Gordon, Ch. J., Paxson, Sterrett, Green, Clark, and Williams, JJ.  Error to the Common Pleas of Fayette County to review a judgment on the verdict for the defendant in an action of assumpsit.  Affirmed.

This was an action by Robert Freed against John Richey to recover $1,100, and interest, the purchase money for a house and lot in Pennsville alleged by the plaintiff to have been bought from him by the defendant and conveyed to the defendant by Jacob J. Slonecker, in accordance with the following agreement:

Article of agreement made and concluded this 15th day of March, 1878, between Robert Freed, of Bullskin township, Fayette county, and state of Pennsylvania, of the first part, and Jacob J. Slonecker, of the township, county and state aforesaid, of the second part, Witnesseth:   That the party of the first part, for the consideration hereinafter mentioned, doth, for himself, his heirs and assigns, covenant and agree with the party of the second part, his heirs and assigns, by these presents, that he, the party of the first part, shall and will, on or before the 25th day of March, 1878, at the proper costs and charges of the party of the first part, his heirs and assigns, by general warranty deed well and sufficiently grant, convey, and assure unto the party of the second part, his heirs and assigns, in fee

Note.—A vendor cannot recover the purchase money, where his title is not marketable.  Elliot v. Tyler, 3 Sad. Rep. 584; Holmes v. Woods, 168 Pa. 530, 32 Atl. 54; Batley v. Foerderer, 162 Pa. 460, 29 Atl. 868; Hamilton v. Crossman, 130 Pa. 320, 18 Atl. 634.

simple, all that tract of land situate in Bullskin township, county and state aforesaid, bounded and described as follows, *viz.:* on the east by the Connellsville and Mount Pleasant road, on the north by land of Chalfant and Campbell, on the west by lands of Dillinger, Sherrick & Co., and on the south by lands of J. and J. Richey, containing 20 acres, more or less. In consideration whereof the party of the second part agrees to pay to the party of the first part, $2,100 in money, and a certain house and lot of ground, with all the appurtenances thereto belonging, in the village of Pennsville, Bullskin township, county and state aforesaid, containing ¾ of an acre, more or less, for which the party of the second part, his heirs and assigns, agree to make to John J. Richey and Joseph Richey a good and lawful warranty deed. In testimony whereof, we have hereunto set our hands and seals this day and year first above mentioned.

Robert Freed        [Seal]

Jacob J. Slonecker    [Seal.]

As this article was originally written, the deed was to be made by Slonecker "to the party of the first part." At some time, it does not appear when, this was struck out, and "John J. and Joseph Richey" was inserted. How Joseph Richey came to be named, no one could tell. He swore that he had nothing to do with the transaction, and so did John; and neither Freed nor Slonecker could say that he had; but there was some evidence that his name was inserted with the consent of John.

Slonecker made and executed a deed for the Pennsville house and lot to J. and J. Richey, and left it at Joseph Richey's house with his mother. Whether this delivery was according to directions of John Richey or not was disputed.

John Richey, while admitting that he had contracted to purchase the premises from Freed for $1,100, alleged that the contract was for a marketable title. (His testimony on this point is quoted in the opinion.) Freed denied this and introduced evidence that John Richey agreed to take whatever title Slonecker had. John Richey proved, under objection and exception, that Slonecker had not a marketable title. [10, 11]

The court below, EWING, A. L. J., refused to charge as requested by the plaintiff's second point, as follows:

. The question of the validity of Slonecker's title to the Pennsville house and lot is not material to the issue in this case, nor

is the question of the possession of the same; if the jury believe that John Richey agreed to accept Slonecker's warranty deed for that house and lot and upon receiving said deed to give the plaintiff his judgment note for $1,100 payable in one year from April 1, 1878, with interest from that date, the plaintiff is entitled to a verdict for the said amount.   [1]

*Ans.* If by this is meant that if the jury believe that Richey agreed to accept the Slonecker title, such as it was, and for any defect therein to rely upon Slonecker's warranty in that deed, and that the deed according to that agreement was executed and delivered, then the point is correct, and the validity of the title or the question of possession under it is not for your consideration. As we have stated to you, that only becomes a question for your consideration in case you find that that was not the agreement between the plaintiff and defendant.   [8]

The court also refused the plaintiff's third point which was as follows:

John Richey testified that he knew, before the article of agreement was signed, that there was a dispute about the title, and that he was satisfied to take Slonecker's warranty deed for the title; and there being no testimony to contradict this evidence, the plaintiff is entitled to a verdict for $1,100, with interest from April 1, 1878.   [2]

The court left it to the jury to say whether or not Freed had agreed to convey to John Richey a marketable title and whether or not the title was marketable.   [3–7, 9, 12]

Verdict and judgment were for the defendant.

The assignments of error specified: (1, 2)   The refusal of the court below to affirm the plaintiff's second and third points; (3–7, 9, 12) portions of the charge; (8) the answer to the plaintiff's second point; and (10 and 11) the admission of evidence of the want of title in Slonecker.

*John Collins* and *Edward Campbell,* for plaintiff in error.—
The court virtually tried the case as if it were the case of land sold by Freed to Richey, where some difficulty about the title or possession had entered into the question of the payment of the purchase money. This is not such a case. This is simply where one has caused another to part with his property by relying on his contract to do a certain thing. In such a case it is immaterial whether any benefit accrues to the first party or whether his expectations are realized.   Chitty, Contr. *29;

Meason v. Kaine, 67 Pa. 126; Livingston v. Byrne, 11 Johns. 555; Weaver v. Wood, 9 Pa. 220; Parker v. Urie, 21 Pa. 305; McMullin v. Glass, 27 Pa. 151.

*Boyle, Mestrezat, & Boyle,* for defendant in error.—The judgment is in accordance with the views expressed in Freed v. Richey, 115 Pa. 361, 8 Atl. 626.

PER CURIAM:

The question whether the defendant had agreed to accept such title as Slonecker had to the lot in question, or whether he was to have a marketable title, was fairly submitted to the jury. Under the evidence the court could not have instructed the jury that the title to the Pennsville house was not material to the issue. The defendant testified: "I bought it from Robert Freed and was to pay him $1,100; that was the agreement; they went on and wrote the article, and I asked Slonecker about the title to that property; he said it was good; I told him I heard it was in dispute; he said it had been but it was settled now; I told him that if there was any trouble about it, that I didn't want to have anything to do with it, but if he would make me a good title and give me a good warranty deed I would take the property."

The defendant was dealing directly with the plaintiff, and the fact that the title was to come through Slonecker is not material. He asserts that he was to get a good title; there was evidence properly admitted to impeach it, and the court submitted it to the jury under adequate instructions.

Judgment affirmed.